# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAKEER NEWSOME, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Civil Action No. 1:18-317 |
| JOHN WETZEL, et al., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

Pro se Plaintiff Brakeer Newsome ("Plaintiff"), an inmate at the State Correctional Institution at Forest, commenced this action under 42 U.S.C. § 1983 for alleged violations of his Eighth and Fourteenth Amendments rights that transpired during his incarceration at the State Correctional Institution at Greene ("SCI Greene"). (ECF No. 8). Named as Defendants in Plaintiff's Amended Complaint are John Wetzel ("Secretary Wetzel"), Secretary of Pennsylvania Department of Corrections; SCI Greene Corrections Officers Teagarden ("CO Teagarden"); Carter ("CO Carter"); C. R. Smith ("CO Smith"); Lt. John Doe; Sgt. John Doe; Robert D. Gilmore ("Superintendent Gilmore"), Superintendent Facility Manager at SCI Greene; and D. Benner ("Hearing Officer Benner"), Disciplinary Hearing Officer at SCI Greene (collectively "Defendants").

Presently pending before the Court is Defendants' partial motion to dismiss. (ECF No. 36). Specifically, Defendants seek dismissal of Hearing Officer Benner, Superintendent Gilmore, and Secretary Wetzel from the case. (*Id.*). Additionally, Defendants ask the Court to dismiss all official capacity claims against the remaining Defendants. (*Id.*). For the reasons stated herein, Defendants' motion will be granted.

## I. PROCEDURAL BACKGROUND

Plaintiff commenced the present action by moving for leave to proceed *in forma pauperis*. On November 20, 2018, Plaintiff's motion was granted, and his complaint was docketed the same day.

In his initial complaint, Plaintiff alleged that his Eighth Amendment rights were violated through the excessive use of force and that his extensive disciplinary confinement violated the due process clause of the Fourteenth Amendment. Subsequently, Defendants filed a partial motion to dismiss in which they sought dismissal of Plaintiff's claims against Secretary Wetzel, Hearing Officer Benner, and Superintendent Gilmore because Plaintiff had failed to allege their personal involvement in an incident that is alleged to have occurred on April 24, 2017.

In response, Plaintiff sought and was granted permission from Court to file an Amended Complaint. (ECF No. 32). Defendants then filed the currently pending motion with an accompanying brief to which Plaintiff has responded. (ECF Nos. 36, 37, 46). Accordingly, the matter is ripe for consideration.

## II. RELEVANT FACTUAL BACKGROUND[1]

Plaintiff's claims in this action stem from an incident which is alleged to have occurred on April 24, 2017 (the "April Incident"). (Am. Compl. at ¶ 2). According to the allegations of the Amended Complaint, while Plaintiff was being escorted from intake to the F-block strip cage, he was verbally assaulted in a "low tone" by CO Teagarden and other unidentified officers. (*Id.* ¶¶ 8, 9). This verbal assault continued after he was escorted out of the strip cage and when he arrived at his housing unit, CO Teagarden forcibly pushed him and pinned his shoulder. (*Id.* ¶¶ 11, 12). He

---

[1] As Plaintiff is proceeding pro se, the factual allegations in his Amended Complaint will be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

was then forced to the ground and ankle restraints were attached, after which his escort to his housing unit continued. (*Id.* ¶¶ 14, 15).

Upon arriving at his cell in SCI Greene's Restricted Housing Unit ("RHU"), he was asked to kneel so that the restraints could be removed, then stood and was told to enter his cell. (*Id.* ¶¶ 16, 17; *see id.* at 3). As he took a step, he was pushed forcibly from behind by CO Carter, causing him to turn awkwardly. (*Id.* ¶ 18). As his cell door was being closed, CO Smith and CO Carter began forcibly pulling on a tether in an effort to pull his hands through the wicket, which represented an unnecessary use of force with malicious intent, resulting in injuries to Plaintiff's wrists. (*Id.* ¶¶ 19, 20).

Plaintiff was subsequently taken to medical triage and it was decided that he should be seen by medical personnel at an outside hospital. (*Id.* ¶¶ 23–29). He was first taken to Washington Hospital and then sent to Presbyterian Hospital, where he was treated with stitches for a severed vein and a torn tendon; an x-ray was also taken. (*Id.* ¶¶ 29–32). Upon his return to SCI Greene, he was placed back in the RHU. (*Id.* ¶ 32).

Plaintiff claims that he was initially refused medical attention, but after he advised a unit manager that his stitches had become undone, he was taken to the main medical triage and placed in a psychiatric observation cell. (*Id.* ¶¶ 33–36). Plaintiff did not want SCI Greene's medical staff to treat him and requested that they contact his family before they performed any medical treatment, but they refused to do so. (*Id.* ¶¶ 37, 38). When Plaintiff requested to be treated at an outside hospital, he was placed in a smock and gown despite the fact that there was no need to do so. (*Id.* ¶¶ 39–41). Plaintiff was then forcibly taken out of the cell and his clothing was cut off, exposing his body and private parts and causing him a "period of humiliation." (*Id.* ¶¶ 42, 43). While exposed on a blanket, he was searched, checked by the medical staff, photographed and

placed back into the cell. (*Id.* ¶ 44). He then went on a hunger strike between April 25, 2017 and May 1, 2017 because he was not able to advise his family about what happened, although the hunger strike is "not likely to be recorded." (*Id.* ¶¶ 45, 46).

On May 2, 2017, Plaintiff had a disciplinary hearing with respect to the April Incident at which he asked Hearing Officer Benner to review the video of what had occurred. (*Id.* ¶ 47). This request was denied but Plaintiff then was advised that no video existed. (*Id.*). Plaintiff alleges that Hearing Officer Benner sentenced him to 180 days in disciplinary custody without "properly explaining the findings of the guilty verdicts." (*Id.*). On appeal, the Program Review Committee ("PRC") at SCI Greene upheld Hearing Officer Benner's decision. (*Id.* ¶ 48). Plaintiff then filed a second level appeal to Superintendent Gilmore. (*Id.*). Plaintiff alleges that Superintendent Gilmore did not provide a "proper response;" however, he also alleges that Superintendent Gilmore denied his appeal (*Id.* ¶¶ 48, 51).

Plaintiff alleges that Secretary Wetzel knew about Defendants' violations but refused to reply to his appeal and denied any relief. (*Id.* ¶¶ 49, 52). He also alleges that at a 90-day review of his disciplinary custody, the PRC told him he was being placed on restricted release by Secretary Wetzel because of the April Incident. (*Id.* ¶ 50). This further extended his confinement. (*Id.*). Plaintiff acknowledges that he grieved his claims to final appeal. (*Id.* ¶¶ 51, 52).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC*

4

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210–11.

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"[P]ro se litigants are held to a lesser pleading standard than other parties." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). "A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal

citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996)).

## IV. DISCUSSION

Section 1983 provides a private citizen with the right to bring an action against any person who under color of state law deprives him of a right or privilege secured by the Constitution of the United States. 42 U.S.C. § 1983. This statute does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a viable § 1983 claim, a plaintiff "must establish that []he was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). Because there is no question Defendants acted under color of state law, the Court's analysis focuses on whether Plaintiff has alleged deprivations of his constitutional rights.

When Plaintiff's pro se Amended Complaint is liberally construed, Plaintiff claims that: (1) CO Teagarden, CO Carter, CO Smith, Lt. John Doe, and Sgt. John Doe violated his Eighth Amendment rights by using excessive force during the April Incident; (2) Hearing Officer Benner violated his Fourteenth Amendment due process rights by rendering a decision against him at a disciplinary hearing without first reviewing the video of the April Incident; (3) Superintendent Gilmore either did not respond to or denied his grievance in which he had challenged Hearing Officer Benner's decision; and (4) Secretary Wetzel knew about Defendants' violations but

refused to reply to Plaintiff's appeal, denied any relief, and later placed him on restricted release because of the April Incident.

In their partial motion to dismiss, Defendants contend that Hearing Officer Benner, Superintendent Gilmore, and Secretary Wetzel should be dismissed from this case because Plaintiff has failed to allege their personal involvement in the alleged constitutional violations. Defendants also seeks dismissal of all official capacity claims against the remaining Defendants based on Eleventh Amendment immunity.

### A. The Excessive Force Claim

Defendants argue that Plaintiff's § 1983 claim against Hearing Officer Benner, Superintendent Gilmore, and Secretary Wetzel regarding the alleged use of excessive force during the April Incident must be dismissed because Plaintiff has not pleaded their personal involvement in the alleged deprivation of his constitutional rights.

Under § 1983, a defendant must be shown to have had personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). A § 1983 plaintiff has two avenues for establishing supervisory liability. First, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)). Second, "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*

Regarding the first avenue for establishing supervisory liability, the Amended Complaint lacks any allegations that Hearing Officer Benner, Superintendent Gilmore or Secretary Wetzel were policy makers who maintained a policy, custom or practice which directly led to the alleged use of excessive force against Plaintiff. Similarly, with respect to the second potential avenue of potential liability, the Amended Complaint fails to allege that Hearing Officer Benner, Superintendent Gilmore or Secretary Wetzel knew of, participated in or acquiesced in the alleged use of excessive force against Plaintiff.

Thus, there are no allegations in the Amended Complaint that could sustain a viable supervisory liability claim. Rather, as alleged, Hearing Officer Benner, Superintendent Gilmore, and Secretary Wetzel were only involved in the handling of Plaintiff's disciplinary hearing and the grievances that followed. Accordingly, Plaintiff's supervisory liability claim against Hearing Officer Benner, Superintendent Gilmore, and Secretary Wetzel must be dismissed.

### B. The Due Process Claim Against Hearing Officer Benner

Plaintiff also alleges that Hearing Officer Benner violated his Fourteenth Amendment due process rights by rendering a decision against him at a disciplinary hearing without first reviewing the video of the April Incident. Defendants address this claim in the context of the use of excessive force. *See* ECF No. 37 at 8 (noting that Hearing Officer Benner's actions at the disciplinary hearing do not "qualify as personal involvement for the Plaintiff's excessive force claim for the purposes for § 1983."). As discussed previously, Hearing Officer Benner's involvement in the grievance process does not state a claim against him related to the alleged use of excessive force.

However, Defendants did not address Plaintiff's due process claim which is premised on Hearing Officer Benner's personal involvement at the disciplinary hearing. Because Plaintiff is a prisoner who has been granted IFP status, the screening provisions of the Prison Litigation Reform

Act ("PLRA") are applicable to this case.[2] The Court's "obligation to dismiss a complaint under the PLRA is not excused even after the defendants have filed a motion to dismiss if it appears that the complaint fails to state a claim based upon grounds not raised by the defendants in their motion to dismiss." *Dare v. United States*, No. CIV. A. 06-115 ERIE, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). As explained below, Plaintiff's due process claim must be dismissed as it fails to state a claim upon which relief may be granted.[3]

To establish a due process violation in the prison context, a plaintiff must show that he was deprived of a liberty interest protected by the Constitution or a statute. *Sandin v. Conner*, 515 U.S. 472, 479 n.4, 483–84 (1995). A prisoner's liberty interests are not violated, however, unless a condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Therefore, in determining whether a prisoner's due process rights have been violated, courts first consider whether there has been a denial of a liberty or property interest. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). If a prisoner makes such a showing, the next step for the courts is to evaluate "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id*.

Here, Plaintiff's due process claim fails at the first step of the inquiry. Plaintiff alleges that as a result of his disciplinary hearing, Hearing Officer Benner sentenced him to 180 days in disciplinary custody. (Am. Compl. ¶ 47). However, 180 days in disciplinary custody, without more, is insufficient to establish the kind of atypical deprivation of prison life necessary to

---

[2] *See* 28 U.S.C. §§1915(e)(2)(B)(ii) and 1915A(b)(1).

[3] In screening complaints under the PLRA, courts utilize the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *D'Agostino v. CECOM RDEC*, 436 F. App'x 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

implicate a protected liberty interest. *See Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002) (seven months in disciplinary custody insufficient to trigger a due process violation); *Griffin v. Vaughn*, 112 F.3d 703, 706–708 (3d Cir. 1997) (fifteen-month placement in administrative custody did not implicate a protected liberty interest because said confinement was not atypical); *Young v. Beard*, 227 F. App'x 138 (3d Cir.2007) (aggregate 980 days in disciplinary segregation did not violate the due process clause).

Moreover, Plaintiff was already in the RHU before Hearing Officer Benner sentenced him to disciplinary custody and there are no allegations in the Amended Complaint from which it can be concluded that the conditions in disciplinary custody differed in any significant way from those in the RHU. Accordingly, the due process claim against Hearing Officer Benner fails to state a claim and must be dismissed.

### C. Remaining Claims Against Superintendent Gilmore and Secretary Wetzel

Plaintiff alleges that Superintendent Gilmore and Secretary Wetzel either failed to respond to his grievances and appeals or denied them. Plaintiff also claims that at a 90-day review of his disciplinary custody, the PRC informed him that he was being placed on restricted release by Secretary Wetzel because of the April Incident.

These claims fail for three reasons. First, it is well established that inmates do not have a constitutional right to a prison grievance system. *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001)).

Second, participation in an after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances. *See Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge

10

necessary for personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Finally, to the extent that Plaintiff may be asserting a due process claim against Secretary Wetzel for placing him in restricted release at the 90-day review of his disciplinary custody, that claim is untenable for the same reason that his due process claim against Hearing Officer Benner fails as there was no denial of a liberty or property interest. Specifically, Plaintiff was already serving a sentence of 180 days in disciplinary custody. Therefore, being placed on restricted release did not extend his stay in disciplinary custody. Rather, the effect of being placed on restricted release was that the disciplinary sentence that Plaintiff was serving was not cut short. This is insufficient to establish the kind of atypical deprivation of prison life necessary to implicate a protected liberty interest. *Sandin*, 515 U.S. at 484.

Accordingly, Plaintiff's claims against Superintendent Gilmore and Secretary Wetzel with respect to their involvement in his grievances and appeals must be dismissed.

### D. Eleventh Amendment Immunity

In the Amended Complaint, Plaintiff has asserted claims against all Defendants in both their official and individual capacities. Defendants contend that Plaintiff's official capacity claims are barred by their immunity from such claims under the Eleventh Amendment.

The Eleventh Amendment protects States and their agencies and departments from suit in federal court. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Individual state employees sued in

their official capacity are also entitled to Eleventh Amendment immunity because "official capacity suits generally represent only another way of pleading an action against the state." *Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir.2010) (citing *Lombardo v. PA. Dept. of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir.2008)).

As part of the executive department of the Commonwealth, the Pennsylvania Department of Corrections is entitled to Eleventh Amendment immunity. *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Therefore, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they are sued in their official capacities. *Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 482 (3d Cir. 2019). Accordingly, the official capacity claims against Defendants are barred by the Eleventh Amendment and must be dismissed.

### E. Futility of Amendment

When dismissing a civil rights case for failure to state a claim, a court must give the plaintiff the opportunity to amend a deficient complaint unless doing so would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors,* Inc., 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (citation omitted). Moreover, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." *Astrazeneca Pharm. L.P.*, 769 F.3d at 849 (3d Cir. 2014) (quoting *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002)).

Here, Plaintiff amended his complaint after Defendants sought its partial dismissal based upon Plaintiff's failure to establish supervisory liability. In his Amended Complaint, Plaintiff did

not allege any facts that would cure the deficiencies highlighted in that motion. Therefore, leave to amend Plaintiff's supervisory liability claims against Hearing Officer Benner, Superintendent Gilmore, and Secretary Wetzel would be futile.

Additionally, the factual basis for Plaintiff's due process claim, which relates to his disciplinary custody in a prison, is insufficient to implicate a protected liberty interest and cannot be cured. Finally, because inmates do not have a constitutional right to a prison grievance system, any attempt to replead claims related to Plaintiff's grievances and appeals would also be futile.

## V. CONCLUSION

Based on the foregoing, Defendants' partial motion to dismiss will be granted.

DATED this 3rd day of January, 2020.

BY THE COURT:

/s/ Patricia L Dodge
PATRICIA L. DODGE
United States Magistrate Judge