**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRAKEER NEWSOME, )<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>TEAGARDEN, CARTER, C. R. SMITH, )<br>and SGT. CRAIG BOWLIN, )<br>)<br>)<br>Defendants. ) | Civil Action No. 18-317 |

**MEMORANDUM OPINION**

Pending before the Court in this prison civil rights lawsuit is a motion for summary judgment filed by the Defendants. For the reasons that follow, the motion will be denied.

### I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In his Amended Complaint, pro se Plaintiff Brakeer Newsome ("Newsome"), alleged that various state officials and staff employed by the Pennsylvania Department of Corrections ("DOC") (collectively, "Defendants") violated his constitutional rights during his incarceration at State Correctional Institute ("SCI") Greene. (ECF No. 32.)

According to Newsome, SCI Greene Corrections Officers Teagarden ("CO Teagarden"), Carter ("CO Carter"), C. R. Smith ("CO Smith") and two unidentified officers (Lt. John Doe and Sgt. John Doe), used excessive force against him during an incident that occurred on April 24, 2017 (the "April Incident"). (*Id.* at 4–6.) At a subsequent disciplinary hearing with respect to the April Incident, Hearing Officer Benner sentenced Newsome to 180 days in disciplinary custody without reviewing the video footage of the incident. (*Id.* ¶ 47.) Additionally, Newsome alleged that SCI Greene Superintendent Gilmore and DOC Secretary Wetzel did not respond appropriately to his appeals. (*Id.* ¶¶ 48–52.)

Defendants later filed a motion seeking partial dismissal of the Amended Complaint. (ECF No. 36.) In the opinion resolving Defendants' motion, the Court explained that, when the Amended Complaint is liberally construed, Newsome claims that:

> (1) CO Teagarden, CO Carter, CO Smith, Lt. John Doe, and Sgt. John Doe violated his Eighth Amendment rights by using excessive force during the April Incident,
>
> (2) Hearing Officer Benner violated his Fourteenth Amendment due process rights by rendering a decision against him at a disciplinary hearing without first reviewing the video of the April Incident,
>
> (3) Superintendent Gilmore either did not respond to or denied his grievance in which he had challenged Hearing Officer Benner's decision, and
>
> (4) Secretary Wetzel knew about Defendants' violations but refused to reply to Plaintiff's appeal, denied any relief, and later placed him on restricted release because of the April Incident.

(ECF No. 47 at 6–7.)

The Court granted Defendants' motion and dismissed Newsome's claims against Defendants Wetzel, Benner, and Gilmore as well as all official capacity claims against the remaining Defendants. (ECF No. 48.) Therefore, the only remaining claims were Newsome's individual capacity claims against CO Teagarden, CO Carter, CO Smith, Lt. John Doe, and Sgt. John Doe based on their alleged use of excessive force against Newsome in violation of his Eight Amendment rights. Those claims proceeded to discovery.

On March 18, 2020, Newsome filed a Second Amended Complaint in which he identified the two John Doe Defendants as Lt. Efaw and Sgt. Craig Bowlin ("Sgt. Bowlin"), substituted their names in the pertinent paragraphs of the Amended Complaint, and amended his claim for relief accordingly. (ECF No. 62.) Because the filing of the Second Amended Complaint inadvertently revived all of the claims that had been previously dismissed, Defendants again moved for partial dismissal. (ECF No. 65.)

In an order dated April 6, 2020, the Court granted Defendants' motion based on the reasons previously stated in the opinion addressing their first partial motion to dismiss. (ECF No. 69.) The Court again dismissed Newsome's claims against Defendants Wetzel, Benner, and Gilmore, and his officially capacity claims against Defendants CO Teagarden, CO Carter, CO Smith, Lt. Efaw, and Sgt. Bowlin. (*Id.* at 2.)

CO Teagarden, CO Carter, CO Smith, Lt. Efaw, and Sgt. Bowlin have now moved for summary judgment based solely on administrative exhaustion grounds. (ECF No. 75.) Their motion is fully briefed (ECF Nos. 76–78, 80–82).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue of material fact that precludes summary judgment. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing

3

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

"[P]*ro se* litigants are held to a lesser pleading standard than other parties." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). "A document filed pro se is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established.").

**III.    DISCUSSION**

Defendants contend that they are entitled to judgment as a matter of law because Newsome failed to properly exhaust his administrative remedies and, therefore, procedurally defaulted on his claims against them.[1]

The Prison Litigation Reform Act ("PLRA") prohibits an inmate from bringing any action concerning prison conditions absent exhaustion of available administrative remedies. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA further mandates that inmates must properly exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 91. Accordingly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

"Of course, exhaustion applies only when administrative remedies are 'available.'" *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). A prison's administrative remedies are not truly available when "the procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates,' where it is 'so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking

---

[1] Although Defendants seek summary judgment on Newsome's Eighth Amendment and Fourteenth Amendment claims, the only claim that remains in this lawsuit is their alleged excessive use of force during the April Incident in violation of Newsome's Eight Amendment rights. Accordingly, the Court limits its analysis to that claim.

5

advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)).

Since "prison grievance procedures supply the yardstick for measuring procedural default[,]" the starting point of the Court's analysis is the policy in place that governs reporting of abuse by inmates, which in this case is the DOC's Inmate Grievance System Policy ("Grievance Policy"). *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The Grievance Policy outlines a three-tier grievance procedure. *See Inmate Grievance System—DC-ADM 804*, Pa. Dep't. of Corr. (May 1, 2015) ("DC-ADM 804").[2]

First, to initiate a claim, an inmate files Form DC-804, Part 1 with the facility grievance coordinator within 15 working days of an incident. *Id.* § 1.A. The inmate must sign and date the form and include a short description of the incident and other basic information. *Id.* Additionally, the inmate must "specify whether he seeks compensation or other legal relief normally available from a court" in his initial grievance. *Id.* The facility grievance coordinator then assigns a tracking number and, if the form is compliant, designates a staff member to serve as the grievance officer for its resolution. *Id.* § 1.C.1&3. Second, if the grievance is denied, the inmate must appeal to the facility manager. *Id.* § 2.A. Finally, if the appeal is denied, the inmate appeals a second time to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *Id.* § 2.B.1. SOIGA must then respond with a final resolution. *Id.* § 2.B.2.

A review of Newsome's grievance record reflects that he followed the Grievance Policy's three-tier procedure to final resolution. (ECF Nos. 78-2 ("Grievance Record").) He filed Form DC-804, Part 1 on May 12 (11 working days after the April Incident). (*Id.* at 2.) After his grievance

---

[2] The Grievance Policy is accessible at: http://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf.

was denied (*id* at 8), Newsome appealed to the facility manager. (*Id.* at 10–11.) That appeal was also denied. (*Id.* at 14.) Although not included in the Grievance Record, it appears that Newsome filed a second appeal to SOIGA, which also was ultimately denied. (*Id.* at 18.)

Defendants maintain that Newsome procedurally defaulted for two reasons. First, they argue that because Newsome only named CO Carter and CO Smith in his grievance, he is barred from bringing suit against CO Teagarden, Lt. Efaw, and Sgt. Bowlin. Second, Defendants contend that Newsome is procedurally barred from bringing this this lawsuit because the only relief he requested in his grievance was the preservation of the camera footage of the April Incident.

Defendants' first argument in unavailing because the "primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Jones*, 549 U.S. at 219 (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Therefore, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* Indeed, Newsome could not have named all the individuals involved in the April Incident in his grievance because there is no evidence that he was aware of their identity at that time.[3] Because Newsome's grievance alerted DOC officials of the nature of his claim regarding Defendants' use of excessive force during the April Incident, he is not barred from bringing suit against CO Teagarden, Lt. Efaw, and Sgt. Bowlin even though they were not named in his grievance.

Defendants' second argument in untenable for three reasons. First, while the Grievance Policy and the instructions in Form DC-804, Part 1 required Newsome to state all relief that he was seeking, a review of Newsome's grievance reflects that he did not seek *any* relief. (Grievance

---

[3] As reflected in his original Complaint, Newsome named two "John Doe" defendants who have since been identified during discovery in this case as Lt. Efaw and Sgt. Bowlin.

7

Record at 2.) Indeed, the grievance officer who denied Newsome's grievance also noted that "[n]o specific relief was requested." (*Id.* at 8.) Therefore, the factual premise of Defendants' second argument, that the only relief Newsome requested was the preservation of the camera footage, is not supported by the record.

Second, because Newsome's grievance was procedurally defective, the facility grievance coordinator erred in designating a grievance officer to resolve it. *See* DC-ADM 804 § 1.C.3. Under the Grievance Policy, the grievance should have been rejected and returned to Newsome with an explanation for the rejection, that is, his failure to request any relief, so that he could resubmit the grievance within five working days of the rejection notice date. *Id.* §§ 1.C.4; 1.A.20. Because Newsome was never given this opportunity, Defendants cannot now argue that he has procedurally defaulted on his claim.

Finally, the record reflects that the DOC's administrative remedies were not "available" to Newsome. The Grievance Policy is not the only policy implicated in this lawsuit. At the time of the April Incident, the DOC also had an Inmate Abuse Policy ("Abuse Policy") in place. *See Inmate Abuse—DC-ADM 001*, Pa. Dep't. of Corr. (Nov. 24, 2014) ("DC-ADM 001").[4] The Abuse Policy defines "abuse" to include conduct by an employee that involves "the use of excessive force" or "the improper use of force" upon an inmate. *Id.*, Glossary of Terms. Under the Abuse Policy, an inmate can report abuse in one of three ways:

(1) report it verbally or in writing to any staff member,

(2) file a grievance in accordance with the Grievance Policy, or

---

[4] The Abuse Policy is accessible at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/001%20Inmate%20Abuse.pdf

(3) report it in writing to DOC's Office of Special Investigations and Intelligence ("OSII"). *Id.* § IV.D.

The procedures manual for the Abuse Policy provides that when a complaint of abuse is received, a prison staff member "shall complete" Form DC-121 (Report of Extraordinary Occurrence—Part 3, Employee Report of Incident). *Id.*, Inmate Abuse Procedures Manual § 1.B.1. That form then must be distributed to a supervisor and the facility's Security Office. *Id.* Once the form is received by the Security Office, the incident "shall be investigated and an investigative report shall be compiled" for submission to OSII. *Id.* § 1.C.c&e. Under the Abuse Policy, for purposes of this investigation, the Security Office is required to interview the inmate complainant and obtain a written statement from him following the interview. *Id.* § 1.C.c(1).

When construed in the light most favorable to Newsome, the record reflects that he brought his complaint to the attention of DOC staff under the Abuse Policy prior to filing his grievance. On May 2, 2017, Hearing Officer Benner sentenced Newsome to disciplinary custody for his involvement in the April Incident. (ECF No. 78-1 at 3, 6.) That same day, Newsome appealed the decision in writing. (ECF No. 82-3 at 2.) Newsome's appeal details his excessive force claim in accordance with the Abuse Policy. (*Id.*) Even his grievance, which was filed on May 11, 2017, reflects that he "talked to anyone that [he] could" before filing the grievance. (Grievance Record at 2.) Yet, the record fails to show that the DOC staff followed up on Newsome's verbal and written reports of abuse under the Abuse Policy.

The day Newsome filed his grievance, the grievance coordinator informed him that his allegations of abuse would be investigated in accordance with the Abuse Policy.[5] (Grievance

---

[5] If an inmate elects to report the alleged abuse by filing a grievance in accordance with the Grievance Policy, the allegations of abuse are still handled in accordance with the Abuse Policy's procedures governing investigations. *See* DC-ADM 804 § 1.D.2 ("A grievance dealing with

9

Record at 4.) Four months later, Newsome had not been advised about the status of this investigation. (*Id.* at 6.) He reached out to the grievance coordinator on September 12, 2017, expressing his frustration due to the delay and stated that he had yet to hear from SCI Greene's Security Office or the OSII. (*Id.*) The next day Newsome's grievance officer informed him that:

> Upon receipt[,] your complaint was elevated to an allegation of abuse. The investigation was monitored and tracked by the OSII thru its conclusion. Upon final review of the investigation by the OSII, it was determined that your allegation is "unfounded" and without merit. As a result, your grievance is denied in its entirety.

(*Id.* at 8.) The facility manager upheld the denial without providing any further explanation. (*Id.* at 14.) Ultimately, SOGIA also denied Newsome's appeal. (*Id.* at 18.)

While SOIGA's chief grievance officer informed Newsome that "his allegations were investigated in accordance with the procedures set forth in the [Abuse Policy]" (*id.*), it is unclear how the DOC was able to complete this investigation without interviewing Newsome given that the Abuse Policy mandates such an interview. Based on this record, the only conclusion that the Court can draw is that although Newsome sought relief under both the Grievance Policy and the Abuse Policy, there was no remedy "available" to him under either policy. This is so because the DOC's procedures operated "as a simple dead end" and Newsome was unable to take advantage of the grievance process due to "machination [and] misrepresentation" by DOC staff. *Shifflett*, 934 F.3d at 365 (quoting *Ross*, 136 S. Ct. at 1859–60).

Because "exhaustion applies only when administrative remedies are available," *id.* at 365, Defendants' contention that Newsome procedurally defaulted on his claim necessarily fails.

---

allegations of abuse shall be handled in accordance with [the Abuse Policy]."); DC-ADM 001 § 1.B.2 ("A grievance dealing with the allegations of abuse shall be handled in accordance with this procedures manual.").

### IV. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment will be denied.

Dated February 23, 2021        BY THE COURT:

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge