IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAKEER NEWSOME,<br><br>Plaintiff,<br><br>vs.<br><br>TEAGARDEN, CARTER, C. R. SMITH, LT. EFAW and SGT. CRAIG BOWLIN,<br><br>Defendants. | Civil Action No. 1:18-cv-317<br><br>Magistrate Judge Patricia L. Dodge |

**MEMORANDUM OPINION**[1]

For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 75) and enter judgment in their favor and against Plaintiff.

**I.    Relevant Procedural Background**

Plaintiff, Brakeer Newsome, is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"). He is proceeding *pro se* in this civil rights action. In his original complaint (ECF No. 8), Plaintiff named as defendants the following DOC employees (collectively, "Defendants"): Corrections Officer ("CO") Teagarden; CO Carter; CO C. R. Smith; two unidentified officers (Lt. John Doe and Sgt. John Doe); DOC Secretary John Wetzel; SCI Greene Superintendent Robert Gilmore; and Hearing Officer Benner.

Plaintiff subsequently filed an Amended Complaint (ECF No. 32) against the Defendants, who he sued in their official and individual capacities. (*Id.*, ¶¶ 2-7.) He brought claims against them under 42 U.S.C. § 1983 related to an alleged excessive force incident that occurred when he

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

was at SCI Greene and his subsequent misconduct hearing.[2] Plaintiff alleged in the Amended Complaint that CO Teagarden, CO Carter, CO Smith and the two unidentified officers (Lt. John Doe and Sgt. John Doe) were involved in an incident that occurred on April 24, 2017 (the "April Incident") during which he sustained injuries to his wrists that required his transport to a Pittsburgh hospital where he received stitches and related medical treatment. (*Id.*, ¶¶ 8-32.)

Plaintiff further alleged in the Amended Complaint that he was charged with several misconducts following the April Incident. (*Id.*, ¶ 47.) A hearing was held on May 2, 2017 before Hearing Officer Benner, who determined that Plaintiff committed the misconducts as charged and sanctioned him to a total of 180 days in disciplinary custody. Plaintiff alleged that Hearing Officer Benner failed to review available video footage of the incident. (*Id.*) He also claimed that Secretary Wetzel and Superintendent Gilmore failed to respond to his appeals in which he challenged Hearing Officer Benner's decision, and that Secretary Wetzel extended his time in the RHU following the April Incident by placing him on restricted release. (*Id.*, ¶¶ 48-50.)

Defendants filed a motion seeking partial dismissal of the Amended Complaint. (ECF No. 36.) In the opinion resolving Defendants' motion, the Court explained that, when the Amended Complaint is liberally construed, Plaintiff claims that:

> (1) CO Teagarden, CO Carter, CO Smith, Lt. John Doe and Sgt. John Doe violated his Eighth Amendment rights by using excessive force during the April Incident;
>
> (2) Hearing Officer Benner violated his Fourteenth Amendment due process rights by rendering a decision against him at a disciplinary hearing without first reviewing the video of the April Incident;
>
> (3) Superintendent Gilmore either did not respond to or denied his grievance in which he had challenged Hearing Officer Benner's decision; and

---

[2] Plaintiff is currently housed at SCI Huntingdon.

2

(4) Secretary Wetzel knew about Defendants' violations, refused to reply to Plaintiff's misconduct appeal and denied any relief, and later placed him on restricted release because of the April Incident.

(ECF No. 47 at 6-7.)

The Court granted Defendants' motion and dismissed with prejudice Plaintiff's claims against Secretary Wetzel, Superintendent Gilmore and Hearing Officer Benner. The Court also dismissed with prejudice the official capacity claims against all Defendants. (ECF No. 48.) Therefore, the only remaining claims were Plaintiff's individual capacity claims against CO Teagarden, CO Carter, CO Smith, Lt. John Doe and Sgt. John Doe based on their alleged use of excessive force against Plaintiff in violation of his Eighth Amendment rights. Those claims proceeded to discovery.

During discovery Plaintiff identified Lt. Efaw and Sgt. Craig Bowlin as the two John Doe defendants. Accordingly, he moved for leave to file an amended complaint solely for the purpose of substituting Lt. Efaw's and Sgt. Bowlin's names in the pertinent paragraphs of the Amended Complaint. (ECF No. 57.) The Court granted Plaintiff's motion and directed the Clerk of Court to file the Amended Complaint (ECF No. 32) and proposed amended complaint (ECF No. 57) as a single document, which was docketed as the Second Amended Complaint (ECF No. 62.)

Because the filing of the Second Amended Complaint inadvertently revived all of the claims and defendants that had been previously dismissed, Defendants again moved for partial dismissal. (ECF No. 65.) In an order dated April 6, 2020, the Court again dismissed Plaintiff's claims against Secretary Wetzel, Superintendent Gilmore and Hearing Officer Benner, and his official capacity claims against CO Teagarden, CO Carter, CO Smith, Lt. Efaw and Sgt. Bowlin. (ECF No. 69.)

Now pending before the Court is Defendants' Motion for Summary Judgment.[3] (ECF No. 75.) They argue that CO Teagarden, Lt. Efaw and Sgt. Bowlin are entitled to judgment as a matter of law because in the grievance Plaintiff filed pertaining to the April Incident he identified only two individuals—CO Carter and CO Smith—as having involvement in that incident. Defendants also argue that they are entitled to judgment as a matter of law because Plaintiff failed to grieve his claim for money damages.

In support of their Motion, Defendants have filed a Brief (ECF No. 76), Concise Statement of Undisputed Material Facts (ECF No. 77) and attached exhibits (ECF No. 78). Plaintiff has filed a Brief in Opposition (ECF Nos. 81) and Concise Statement of Disputed Facts and attached exhibits. (ECF No. 82.)

## II.   Standard of Review

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

---

[3] Previously, the Court issued an opinion and order that denied Defendants' Motion. The following day, the Court *sua sponte* vacated them and advised the parties that an opinion and order would be issued after further review. (ECF No. 85.)

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue of material fact that precludes summary judgment. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g., Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff

was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

### III. Relevant Factual Background

The facts discussed herein are limited to those relevant to the disposition of the arguments raised in Defendants' summary judgment motion. They are taken from Defendants' Statement of Undisputed Material Facts (ECF No. 77) and exhibits (ECF No. 78). Plaintiff did not file a response to this statement of facts in accordance with the Court's Local Rules. L.Cv.R. 56.C.1. Accordingly, Defendants' statements of fact are deemed admitted unless they are specifically denied or otherwise controverted by a separate concise statement. L.Cv.R. 56.E.

In determining whether genuine issues of material fact exist in this case, the Court has examined the Second Amended Complaint (ECF No. 62) which Plaintiff signed under penalty of perjury. That is because, although a party may not rest on his or her pleadings to create a fact issue sufficient to survive summary judgment, allegations that are based upon personal knowledge and which are contained in a verified complaint (ordinarily not required under the Federal Rules of Civil Procedure) may be used to oppose a motion for summary judgment because the complaint can be treated as an affidavit or declaration. *See, e.g., Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985); 11 MOORE'S FEDERAL PRACTICE-CIVIL § 56.94[2A], Lexis (database updated Mar. 2021). Accordingly, the Court has considered the factual assertions in the Second Amended Complaint to the extent that they are based on his personal knowledge and set out facts that would be admissible in evidence, and further, that Plaintiff is competent to testify on the matters stated. *See*

Rule 56(c)(4). The Court also has considered the exhibits Plaintiff attached to his Concise Statement of Disputed Facts (ECF No. 82) because Defendants do not dispute their authenticity. However, the Court notes that Plaintiff did not verify the averments he made in his Concise Statement of Disputed Facts (ECF No. 82) and, in any event, those averments are not relevant because he addressed only the merits of his Eighth Amendment claim and did not address Defendants' exhaustion defenses.

In May 2017 Plaintiff filed Grievance # 677383 under DC-ADM 804, which is the DOC's Inmate Grievance System Policy.[4] (Defs' Ex. C.) In this grievance Plaintiff wrote:

> On April 24th, 2017 while ATA [Authorized Temporary Absence] in your facility while being escorted back to my cell from the strip cage on F unit I was provoked by officers Carter & C.R. Smith by being forcibly pushed in my cell from behind (while tethered & handcuffed) causing me to spin around as they closed my cell door. Upon doing so I was then unable to properly place my hands in the tray slot causing the officers to use unnecessary force causing me to sustain gashes and cuts on both wrists. I had to be taken back out my cell to F blk medical triage to be looked at by medical staff at SCI Greene. The medical staff could not treat me due to the severity of my wounds. I was sent to the outside hospital by facility van not an EMS ambulance. I was sent to Washington [local hospital] first they could not help me so they sent me to UPMC where I was worked on by doctors that said that I only need stiches on both wrists.
>
> I would like for the camera footage to be preserved for further investigation. I talked to anyone that I could.

(Defs' Ex. C.)

The Facility Grievance Coordinator issued to Plaintiff an Extension Notice that explained to him that staff has been authorized to extend the response time to the allegations of abuse Plaintiff

---

[4] The Grievance Policy is accessible at: https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx.

made in Grievance # 677383 in accordance with DC-ADM 001, which is the DOC's Inmate Abuse Policy.[5] (Defs' Ex. D; ECF No. 77, ¶ 10.) In relevant part, DC-ADM 804 provides:

> 2. A grievance dealing with allegations of abuse shall be handled in accordance with Department policy **DC-ADM 001, "Inmate Abuse."**
>
> 3. This may extend the time for responding to the grievance, but will not alter the inmate's ability to appeal upon his/her receipt of the initial review response.
>
> 4. When a grievance is related to an allegation of abuse, the Facility Grievance Coordinator/designee will issue an **Extension Notice** to the inmate by checking the box "Notice of Investigation" **on the Extension Form.**
>
> 5. The initial review response will be completed by the assigned Grievance Officer *after* the results from the Office of Special Investigations and Intelligence (OSII) are received.

DC-ADM 804, § 1(D)(2)-(5) (emphasis in original).

In correspondence to the Facility Grievance Coordinator stamped received by the Superintendent's Office on September 12, 2017, Plaintiff wrote and inquired about the status of Grievance #677383 and indicated that he had yet to hear from SCI Greene's Security or the OSII regarding the allegations of abuse that he made in this grievance. (Defs' Ex. E; ECF No. 77, ¶ 11.)

---

[5] DC-ADM 001 is accessible at: https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx. Under DC-ADM 001, an inmate "who is the victim of abuse" can report the abuse in one of three ways: (1) report it verbally or in writing to any staff member; (2) file a grievance in accordance with Department policy DC-ADM 804, "Inmate Grievance System;" or (3) report it in writing to the Department's OSII. DC-ADM 001, Policy Statement, § IV(D)(1)-(3). DC-ADM 001 also provides for certain procedures that must be followed by the facility's Security Office when investigating allegations of abuse, which include preparing an investigative report that is then forwarded to OSII for review. DC-ADM 001, Procedures Manual, § 1(C). In the event that an inmate elects to report the alleged abuse by filing a grievance in accordance with DC-ADM 804, the allegations of abuse are still handled in accordance with DC-ADM 001's procedures governing investigations. *See* DC-ADM 804 § 1(D)(2) ("A grievance dealing with allegations of abuse shall be handled in accordance with Department policy DC-ADM 001, 'Inmate Abuse.'"); *see also* DC-ADM 001, Procedures Manual § 1(B)(2) ("A grievance dealing with the allegations of abuse shall be handled in accordance with this procedures manual"). As a result, and as explained to Plaintiff in this case, the time for responding to an inmate's grievance may be extended, and the initial review response will be completed by the assigned grievance officer when the results of the investigation from the OSII are received. DC-ADM 804 § 1(D)(3), (5).

On September 13, 2017, the assigned grievance officer, Lt. Silbaugh, issued the Initial Review Response to Grievance # 677383, notifying Plaintiff:

> I am in receipt of your grievance and have been assigned to investigate your concern[s]. In your complaint you claim that while ATA @ SCI GRN on 4/24/2017 you were treated with "unnecessary force" resulting in "gashes" on both of your wrists. No specific relief was requested.
>
> Upon receipt your complaint was elevated to an allegation of abuse. The investigation was monitored and tracked by the OSII thru is conclusion. Upon final review of the investigation by the OSII, it was determined that your allegation is "unfounded" and without merit.
>
> As a result, your grievance is denied in its entirety.

(Defs' Ex. F.)

Plaintiff appealed the denial of Grievance # 677383 to Superintendent Gilmore, who upheld the response. (ECF No. 77, ¶ 16; Defs' Exs. G, H; ECF No. 62, ¶ 51.) Plaintiff requested and received an extension of time to file a final-level appeal to the DOC's Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Defs' Ex. I.0SOIGA's chief grievance officer denied Plaintiff's appeal. She acknowledged that as relief Plaintiff did "seek for the camera footage to be preserved for further investigation." (*Id.*; *see also* ECF No. 62, ¶ 52 and pp. 15-16.) She further wrote:

> Review of the record found that your allegations were investigated in accordance with the procedures set forth in the DC ADM 001. Upon OSII's review of the investigation, video footage, etc., they found that your allegations of improper use of force was unfounded. You provide no new information/evidence to this office to support your claims. Therefore, this office upholds the responses provided to you. Video footage will be preserved in accordance with policy.

(*Id.*)

**IV.     Discussion**

    A.  <u>The PLRA's Exhaustion Requirement</u>

The Prison Litigation Reform Act ("PLRA") mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a "non-jurisdictional prerequisite to an inmate bringing suit" and when raised by a defendant it constitutes a threshold issue to be addressed by the court. *See, e.g., Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

The Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones v. Bock*, 549 U.S. 199, 211 (2007)). Exhaustion is mandatory under the PLRA regardless of the type of relief sought and the type of relief available through administrative procedures. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Courts are not given discretion to decide whether exhaustion should be excused, *Ross*, 136 S. Ct. at 1858, and there is no exception to the exhaustion requirement based on "futility." *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citations omitted).

The PLRA's mandatory exhaustion requirement means not only that a complaint filed before administrative remedies are exhausted is premature and cannot be entertained, it also means that failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. *Woodford*, 548 U.S. at 93-95; *see also Spruill v. Gillis*,

372 F.3d 218, 227-30 (3d Cir. 2004). That is because "the PLRA's exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93; *Spruill*, 372 F.3d. at 227-30.

Importantly, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31 (the "prison grievance procedures supply the yardstick for measuring procedural default."). Therefore, the procedural requirements for exhaustion in a given case "are drawn from the polices of the prison in question rather than from any free-standing federal law." *Shifflett v. Korszniak,* 934 F.3d 356, 364 (3d Cir. 2019) (citing *Spruill*, 372 F.3d at 231).

The Court of Appeals has explained that if the defendant demonstrates that the inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019) (citing *Rinaldi*, 904 F.3d at 268). "If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment." *Id.*

The Supreme Court explained in *Ross* that the term "available" means "capable of use" to obtain "some relief for the action complained of." 136 S. Ct. at 1859 (quoting *Booth,* 532 U.S. at 738).

> [It] identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Rinaldi*, 904 F.3d at 266-67 (quoting *Ross*, 135 S. Ct. at 1859-60). *See also Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (misleading or deceptive instructions from a prison official, as well

as clearly erroneous statements, can render a grievance process unavailable). The Court of Appeals has further held "that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement" but only as to the matters complained of and the relief sought in the grievance. *Shifflett*, 934 F.3d at 365. Absent a situation where administrative remedies are not "available," a court may not excuse an inmate's failure to exhaust "irrespective of any 'special circumstances.'" *Ross*, 136 S. Ct. at 1856.

    B.  <u>The Inmate Grievance System in DOC Institutions</u>

As previously discussed, the DOC has an official Inmate Grievance System that governs the grievance and appeals process in Pennsylvania correctional institutions. *See* 37 Pa. Code § 93.9. The Inmate Grievance System is set forth in DC-ADM 804 and "is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate." DC-ADM 804, § 1(A)(2). However, "[i]t is not meant to address incidents of an urgent or emergency nature including allegations of sexual abuse[,]" which must be addressed through DC-ADM 008, Prison Rape Elimination Act (PREA). *Id.* It is also not meant to address "[i]ssues concerning a specific inmate misconduct charge, conduct of hearing, statements written within a misconduct and/or other report, a specific disciplinary sanction, and/or the reasons for placement in administrative custody[,]" which must be addressed through DC-ADM 801, Inmate Discipline and/or DC-ADM 802, Administrative Custody Procedures. *Id.*, § 1(A)(7).

DC-ADM 804 sets forth a three-tier administrative remedy system. A prisoner is required to present his grievance to the Facility Grievance Coordinator for initial review. *Id.*, § 1(A)(5). The prisoner is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. *Id.*, § 2(A). From there the prisoner must appeal to SOIGA for appeal to

final review. *Id.*, § 2(B).

As previously noted, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31. There are several requirements to filing a proper grievance in accordance with DC-ADM 804. Relevant to this case, DC-ADM 804 requires:

> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
> a.  The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
>
> b.  *The inmate shall identify individuals directly involved in the event(s).*
>
> c.  The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.
>
> d.  *If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.*

*Id.*, § 1(A)(11) (emphasis added).

C. <u>Plaintiff Procedurally Defaulted All Claims for Relief Against Defendants</u>

Defendants argue that CO Teagarden, Lt. Efaw and Sgt. Bowlin are entitled to judgment in their favor on the Eighth Amendment claims Plaintiff brings against them because he did not identify them in Grievance # 677383 or otherwise indicate that any other individuals aside from CO Carter and CO Smith were involved in the April Incident. In opposition, Plaintiff argues that he was not required to identify CO Teagarden, Lt. Efaw and Sgt. Bowlin in his grievance. (ECF No. 81 at 4.) In support he cites the Supreme Court's decision in *Jones*, in which the Supreme Court held that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." 549 U.S. at 219.

13

Plaintiff's reliance upon *Jones* is misplaced. In that case, the Supreme Court held that an inmate's failure to name the defendants in his grievance did not constitute a failure to exhaust because there was no such requirement to do so contained in the Michigan state grievance policy at issue in that case nor was there any in the PLRA itself. *Jones*, 549 U.S. at 218-19. By contrast in this case, the DOC's policy required that in the grievance Plaintiff filed he "identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(11)(b). As the Supreme Court explained in *Jones*, it is the prison's grievance policy (here, the policy set forth in DC-ADM 804) that "define[s] the boundaries of proper exhaustion." 549 U.S. at 218; *Spruill*, 372 F.3d at 231.

Thus, Plaintiff's failure to comply with the requirements of DC-ADM 804, § 1(A)(11)(b) with respect to the excessive force claims he brings against CO Teagarden, Lt. Efaw and Sgt. Bowlin in this civil action results in his procedural default of those claims. The fact that Plaintiff did not know Lt. Efaw's and Sgt. Bowlin's names when he filed his grievance is irrelevant, since he identified CO Carter and CO Smith as the *only* officers having any involvement in the April Incident. Plaintiff could have indicated that CO Teagarden and at least two other unnamed officers were also involved in the incident, but he failed to do so.

Defendants also argue that Plaintiff procedurally defaulted his claims for monetary relief because he did not request that relief in Grievance #677383.[6] They are correct.

---

[6] In the Second Amended Complaint, Plaintiff sought declaratory and monetary relief against the remaining Defendants on his Eighth Amendment excessive force claims. (ECF No. 62, at pp. 16-18, ¶¶ A, C and D; *id.* at p. 22, ¶¶ A, C and D.) However, his request for declaratory relief is not appropriate because a declaratory judgment is unavailable "solely to adjudicate past conduct" or "to proclaim that one party is liable to another." *Corliss v O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam); *see also Andela v. Administrative Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam). Accordingly, only Plaintiff's claim for money damages is at issue here.

As explained above, DC-ADM 804 § 1(A)(11)(d) requires that "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."

Courts within the Third Circuit have held that in light of the mandatory nature of the language set forth above at DC-ADM 804 § 1(A)(11)(d) regarding the requesting of "compensation or other legal relief normally available from a court," an inmate procedurally defaults any claim for monetary relief if he did not seek such relief in his grievance. *See, e.g., Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) (affirming the district court's grant of summary judgment for defendant on plaintiff's excessive force claim because plaintiff failed to request monetary relief in his initial grievance) (citing *Spruill*, 372 F.3d at 233-35);[7] *Taylor v. Chesmer*, No. 2:18-cv-1579, 2020 WL 5366055 (W.D. Pa. 2020) (plaintiff's request for monetary relief barred because he did not request that relief in his grievance); *Cunningham v. Zubsic*, No. 1:16-cv-127, 2019 WL 134209, *5 (W.D. Pa. Jan. 8, 2019) (same); *Camacho v. Beers*, No. 2:16-cv-1644, 2018 WL 6618410, *3 (W.D. Pa. Dec. 18, 2018) (holding that, because "Plaintiff failed to request the specific relief of monetary compensation in the grievances he filed as to the subjects of this lawsuit...he did not exhaust all administrative remedies with regard to such claims...[and] may not pursue an action in federal court based on the claims raised in his procedurally defective grievances."). As the district court in *Wright* explained:

> a requirement to set forth the compensation or legal relief requested places the
> agency on notice of the prisoner's demand or valuation of his or her claim, and

---

[7] The Court of Appeals in *Wright* explained that in *Spruill* it had "rejected a procedural default claim based on an inmate's failure to specifically request monetary relief on a prior version of DC-ADM 804" that did not *require* an inmate to seek such relief in a grievance. *Wright*, 729 F. App'x at 227. It further explained that "[c]rucially…we also observed that—to the extent [the Prison] was dissatisfied with our ruling—the Prison could 'alter the grievance system to require more (or less) of inmates by way of exhaustion.'" *Id.* (quoting *Spruill*, 372 F.3d at 235). "Subsequently, the Prison amended its policy to include the mandatory language deemed lacking in *Spruill*." *Id.*

15

> furthers the PLRA's underlying litigation avoidance goals by supporting early settlement or accommodation. Proper exhaustion, including adherence to a requirement to delineate the relief requested, therefore promotes the efficiency recognized in *Woodford*, permitting claims to be "resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Woodford* at 87, 126 S. Ct. 2378. Given the underlying goals of the PLRA, and the state of the law requiring adherence to clearly stated content requirements, this Court must conclude that the mandatory nature of the language at issue gives rise to procedural default as a result of Plaintiff's failure to set forth the desired monetary or other legal relief on his initial grievance form.

*Wright v. Sauers*, No. 13-cv-358, 2017 WL 3731957, 7-8 (W.D. Pa. Aug. 30, 2017), affirmed, 729 F. App'x 225 (3d Cir. 2018).

There is no dispute that Plaintiff failed to seek monetary relief in Grievance # 677383. Plaintiff does not even address Defendants' argument that his clams for monetary relief are procedurally defaulted.

Based upon the foregoing, Defendants have satisfied their initial burden of demonstrating that Plaintiff failed to resort to the available administrative remedies because in Grievance # 677383 he: (1) did not identify CO Teagarden, Lt. Efaw and Sgt. Bowlin, or in other words, any other individuals besides CO Carter and CO Smith, as having any involvement in the April Incident and also (2) did not request monetary relief. Thus, the burden now shifts to Plaintiff to demonstrate that the administrative remedies were in fact unavailable to him for his Eighth Amendment claims. *See, e.g., Rinaldi*, 904 F.3d at 268. Plaintiff has not satisfied his burden. In fact, he does not argue that administrative remedies were unavailable to him or direct the Court to any circumstance present in this case that would support a conclusion that administrative remedies were unavailable for his Eighth Amendment claims.[8]

---

[8] Plaintiff does not argue that he was exempt from having to exhaust his claims through the DC-ADM 804 grievance process because his claims were investigated pursuant to DC-ADM 001. The Court notes that the Court of Appeals has not decided whether a Pennsylvania prisoner can exhaust administrative remedies through DC-ADM 001 or what steps would be necessary for that
*Footnote continued on next page…*

16

Therefore, CO Teagarden, Lt. Efaw and Sgt. Bowlin are entitled to judgment in their favor because Plaintiff procedurally defaulted his Eighth Amendment claims brought against them since he failed to identify them in his grievance as having been involved in the April Incident. Additionally, Plaintiff is barred from seeking monetary relief against any Defendant because he failed to seek such relief in his grievance and, therefore, all Defendants are entitled to judgment in their favor on that ground as well.

---

procedure. *See, e.g., Washington v. Sedlock*, No. 17-cv-988, 2020 WL 4353198, at *6 (W.D. Pa. May 12, 2020) (citing *Victor v. Lawler*, 565 F. App'x 126, 129 (3d Cir. 2014)), report and recommendation adopted sub nom. *Washington v. Gilmore*, No. 17-cv-988, 2021 WL 688088 (W.D. Pa. Feb. 23, 2021). District courts have found in some cases that a plaintiff has exhausted his claim of abuse after the completion of an investigation when those allegations were reported under DC-ADM 001. *See, e.g., Freeman v. Wetzel*, No. 17-1506, 2020 WL 6730897, *11-14 (W.D. Pa. Aug. 6, 2020) (where plaintiff pursued all three alternative avenues for reporting set forth in DC-ADM 001 and collecting district court cases which "found that allegation of abuse do not have to be filed through all levels of the DC-ADM 804 system if the inmate reports abuse through DC-ADM 001."), report and recommendation adopted by, 2020 WL 5362050 (W.D. Pa. Sept. 8, 2020). Here, Plaintiff did not report the alleged abuse under DC-ADM 001. That is, he did not report it directly to a staff member or in writing to OSII as set forth in DC-ADM 001, Policy Statement § IV(D)(1), (3). Instead, he elected to report the alleged abuse by filing a grievance in accordance with DC-ADM 804, and in doing so the process set forth therein was "available" to him. The PLRA is clear that an inmate must exhaust the administrative remedies that "are available," and, therefore, since Plaintiff elected to report CO Carter's and CO Smith's alleged abuse during the April Incident by filing a grievance pursuant to DC-ADM 804, then he was required to follow the requirements outlined in that policy. *See Washington*, No. 17-cv-988, 2020 WL 4353198 at *6 at n.4. In any event, it is once again noted that Plaintiff did not report his claims of abuse through DC-ADM 001, nor does he argue that Defendants' motion for summary judgment should be denied on the basis that he did exhaust his claims because they were investigated by OSII in accordance with DC-ADM 001 after he filed his grievance. Moreover, Plaintiff did actually file a grievance against CO Carter and Co Smith and appealed that grievance to final review, he just failed to exhaust his request for monetary relief and his claims against the other remaining defendants.

## V. Conclusion

Based upon the foregoing, the Court will grant Defendant's Motion for Summary Judgment (ECF No. 75) and enter judgment in their favor and against Plaintiff on all federal claims.

An appropriate Order follows.

Dated:  March 29, 2021                               BY THE COURT:


                                                     /s/ Patricia L. Dodge
                                                     PATRICIA L. DODGE
                                                     United States Magistrate Judge